CASE 67.—ACTION BY MILLARD HUDDLESTON'S ADMINIS-
TRATOR AGAINST THE STRAIGHT CREEK COAL
& COKE COMPANY.—June 1, 1910.

# Huddleston's Admr v. Straight Creek Coal & Coke Co.

Appeal from Bell Circuit Court.

W. T. DAVIS, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1. Master and Servant—Death of Servant—Coal Mine—Defective Roof.—Decedent, a driver in a mine, observing defective places in the roof, notified the inspector thereof, who directed a roofman to go to the place and remove any slate or rock that was likely to fall. Pursuant to such direction, the latter, with the assistance of decedent, went to the place, made an inspection, and removed the rock, which, from such inspection, appeared to be dangerous. Notwithstanding this inspection and removal, slate fell from the same place early on the succeeding morning as decedent was passing, and struck and killed him. Held, that the jury were authorized to find from the physical facts that the roofman had not made a proper inspection or had not removed all the dangerous material, and hence proof did not show defendant free from negligence as a matter of law.

2. Trial—Instructions.—Where, in an action for the death of a driver in a coal mine by the fall of material from the roof, the only defense was that defendant had exercised ordinary care to keep the mine in a reasonably safe condition, the jury should be instructed that if they believed from the evidence that defendant exercised ordinary care in making the inspection, and in maintaining the mine at the time decedent was killed in a reasonably safe condition, they should find for defendant, otherwise they should find for plaintiff.

B. B. GOLDEN for appellant.

ROBT. E. WOODS and JAMES C. POSTON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This is an action to recover damages for the death of Millard Huddleston, who was killed in the mine of the appellee company. He was employed in driving a mule that pulled the cars on a track on which the coal was taken out of the mine, but, when not engaged in that capacity, it was his duty to perform such other work about the mine as he was directed to do.    His death was caused by the falling of slate from the roof and side of the cross-entry near the neck of room No. 46 in the mine. Upon the conclusion of the evidence for both parties, the court instructed the jury to return a verdict in favor of the company. It is the judgment on this verdict that is now complained of,. and a reversal is asked upon the ground that the court erred in taking the case from the jury.

A motion was made to strike the bill of evidence and exceptions from the record upon the ground that the record did not show that a motion for a new trial was made, or that the bill of exceptions was filed by an order of court. The original record was defective in these respects, but a supplemental record has been filed curing these errors, and showing that a motion for a new trial was made upon grounds filed, and that the bill of exceptions was filed in due time and according to the regular procedure, and so we need not further concern ourselves about this preliminary question of practice.

The testimony shows   that one Simpson was the "boss driver," and that it was his duty to inspect the entries for the purpose of discovering any defective places in the roof or sides that might endanger the lives of the miners, and that he had under him a man

named Elswick, whose duty it was to take down the loose slate and rock at such places as he was directed by Simpson to go. It is further shown that, although it was not the duty of Huddleston to inspect the entries or rooms, yet he was instructed to report to Simpson any dangerous places that he discovered so that they might be repaired. Some days before Huddleston was killed, the attention of both Simpson and Elswick was called by Huddleston and other miners to the dangerous condition of the entry at and in the immediate neighborhood of the place where the slate fell on Huddleston, and, after receiving this information, Simpson directed Elswick to go to the place and remove any slate or rock that was likely to fall. In pursuance of this direction, Elswick on Thursday afternoon about 3 o'clock went to the entry, and with the assistance of Huddleston, who happened to be there, he inspected the roof of the entry at the place the slate fell, as well as other places in that part of the entry. Elswick testifies that with the aid of Huddleston there was removed all the rock and slate that appeared from an inspection to need attention. In other words, his evidence was to the effect that he exercised ordinary care to, and did, put the entry at the place Huddleston was killed in a reasonably safe condition. Passing the testimony of A. Diamond, offered to be introduced in behalf of the plaintiff below, and which, although clearly competent in rebuttal, was rejected by the court, there is no evidence to contradict that of Elswick. Putting the case upon the testimony of Elswick, the argument is made in behalf of the company that as the uncontradicted evidence shows that the company through its employes, Simpson and Elswick, exercised ordinary care to put the mine at the place Huddleston was killed

in reasonably safe condition, and as there was no known cause that interfered with or changed that condition between the time it was thus inspected and put in reasonably safe condition and the time when Huddleston was killed early the next morning, the court properly directed a verdict in its favor. But, notwithstanding the inspection and the removal of the loose slate on Thursday afternoon, the fact remains that early the next morning slate did fall from the place inspected, and so the question comes up: Must the statements of Elswick be accepted as conclusive of the fact that the company fully discharged its duty to keep the mine in a reasonably safe condition, or was the question whether or not it performed this duty one for the jury to determine from all the facts and circumstances in the case? It can readily be seen that this is a most important question, not only as it affects the case before us, but as it will affect other similar cases in which a recovery is sought against the master for the destruction of the life of the servant based on the failure of the master to furnish the servant reasonably safe places or appliances. If the principle contended for by counsel for the company is the correct law, then in every case involving a question like this the master will be absolved from liability if he can prove that the place or appliance was examined and inspected shortly before the injury and found to be reasonably safe for the use of the servant, and there is no evidence to disprove that the inspection was made, or to contradict the evidence of those who say that in making it they exercised ordinary care. If this is the law, then, when a servant is killed by a defective appliance or unsafe place, all the master need do to compel a verdict and judgment in his favor is to show by un-

contradicted evidence that such an inspection as we
have pointed out was made, and that no change had
taken place or been made in or about the thing in-
spected between the time of inspection and the death,
although the jury might be authorized to believe from
the physical facts shown in evidence that the appli-
ance or place where the servant was killed was not in
a reasonably safe condition at the time of the acci-
dent. Thus the law would place almost certainly in
the power of the master the means by which he could
defeat an action and deprive the complaining party
of the right to rely for his recovery upon facts and
circumstances that in the opinion of the triers of the
facts might be amply sufficient to show that the de-
gree of care required was not exercised. We cannot
give our approval to a doctrine like this. The jury
have the right to hear and consider, not only the evi-
dence from the mouths of witnesses as to what they
did and what was done, but they have also the right
to hear and consider other evidence from witnesses
who are qualified to testify as to the physical condi-
tion of the place or appliance before, at the time, and
immediately after the accident, and the jury may
from the facts and circumstances thus proven be war-
ranted in concluding that they are entitled to more
weight than the personal evidence of the witnesses
whose testimony was in contradiction of these facts
and circumstances. Let us take this case as an apt
illustration. Notwithstanding the uncontradicted
evidence of Elswick, the jury might be of the opinion,
based upon the evidence of the physical conditions,
that, as the roof fell soon after his inspection, he did
not make a careful inspection, or, in other words, that
the master did not exercise ordinary care to put and
keep the entry in reasonably safe condition. This was

a question for the jury, not the court, and so the court erred in taking the case from the jury.

This conclusion is not in conflict with the rule laid down in Sinclair's Adm'r v. Illinois Central Railroad Co., 129 Ky. 828, 112 S. W. 910. In that case the liability of the company depended on whether or not Sinclair read or heard read a train order. If he read or heard it read, the company was not liable. If he did not read or hear it read, it was liable. The conductor testified that he read the order in the presence of the fireman, and its contents were discussed and understood by him. In holding that the uncontradicted evidence of the conductor upon this vital and controlling point in the case entitled the company to a verdict, the court said: ''Where a witness testifies unequivocally to a fact, and there is nothing in his evidence to warrant the jury in rejecting it, and he is in no wise contradicted or impeached, the jury are not at liberty to disregard his testimony. The jury are sworn to render their verdict according to the evidence, and they are not at liberty to reject the evidence capriciously. If this case had been submitted to the jury, they would have been bound to find a verdict for the defendant under the proof, and as there was but one thing that they could properly do under the evidence, and of this there could be no difference of opinion, the court properly instructed them peremptorily to find a verdict for the defendant.'' But in that case there was nothing in the evidence of the conductor or in the subsequent facts to impeach or contradict or discredit his testimony. He was testifying to a statement or conversation or act that took place in the presence of another person. What followed this act or conversation did not tend to cast doubt upon what

the conductor said. His evidence was not contra-
dicted by any circumstance or physical fact.

The principle announced in the Sinclair Case was
also applied in L. & N. R. Co. v. Mounce, 90 S. W.
956, 28 Ky. Law Rep. 933; Hall v. L., H. & St. L. Ry.
Co., 104 S. W. 275, 31 Ky. Law Rep. 853; C., N. O. &
T. P. Ry. Co. v. Yocum, 123 S. W. 247. In each of
these cases the uncontradicted evidence showed that
the  plaintiff had been guilty of such contributory
negligence as would defeat a recovery. But there is
no question of contributory negligence in this case.
The only defense relied on by the company is that it
exercised the full measure of care required to main-
tain the place at which Huddleston was killed in a
reasonably safe condition and so it was not guilty of
negligence.  And, while it is true that there is no
direct evidence to contradict what Elswick says he
did in the presence of Huddleston, the facts that fol-
lowed and the conditions that ensued did tend to con-
tradict and discredit his evidence. The rule that the
uncontradicted and unimpeached evidence of a wit-
ness is not in all cases conclusive is well illustrated in
the cases that have come up, in which it was sought
to recover damages for stock killed or injured by
trains. In this class of cases we have frequently held
that, if there are no circumstances or physical facts
to impeach or contradict or discredit the testimony
of the trainmen that the accident was unavoidable,
there cannot be a recovery. On the other hand, al-
though the person in charge of the train may testify
that the accident was unavoidable, yet, if there are
any facts or circumstances tending to contradict this
evidence, the case should go to the jury. This idea is
well expressed in Illinois Central R. Co. v. Stanley,
96 S. W. 846, 29 Ky. Law Rep. 1054, where we said:

"It is insisted for appellant that inasmuch as the engineer and fireman are uncontradicted in their testimony as to how the accident occurred, and it thereby appears that it happened on the crossing without negligence on their part, the prima facie evidence of negligence arising from the killing of the stock on the railway right of way prescribed by section 809 of the Kentucky Statutes is overcome, and therefore it was entitled to a peremptory instruction in its favor at the close of all the testimony.  This position would be incontrovertible if the physical facts did not militate against the testimony of appellant's employes.  * * *  The jury were not bound in the face of the facts which tended to show the negligence of the appellant to accept the testimony of its employes, although no other living witness saw the accident.  The jury had the right to apply the maxim, 'Res ipsa loquitur.' "  Nor is this case to be adjudged by Elkins' Adm'r v. New Livingston Coal Co., 115 S. W. 203. . The controlling facts in that case as stated in the opinion are materially different from the facts presented by this record.  In that case the accident that resulted in the death of Elkins was due entirely to his own negligence in failing to protect the mine as he was directed to do.  The defense was rested upon the ground that the death of Elkins was caused solely by his own contributory negligence; or, in other words, his failure to take the precautions he was directed to take to protect himself from injury. There is no contention in this case that Huddleston was guilty of any negligence.  The only ground of defense is that the company having exercised ordinary care to keep the mine in a reasonably safe condition was not liable.  If there is a retrial, the jury upon this

point should be instructed in substance that if they believe from the evidence that the company exercised ordinary care in making the inspection, and in maintaining the mine, at the time Huddleston was killed, in a reasonably safe condition, they should find for the defendant; otherwise, they should find for the plaintiff.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.

BARKER, J., not sitting.