## Carter Coal Company v. Prichard's Administrator.

(Decided November 18, 1915.)

### Appeal from Knox Circuit Court.

1. **Master and Servant—Joint Action Against.**—In an action by the administrator of a person who has been killed by negligence or wrongful act, the plaintiff may join as defendants in the action the master and the servant superior in authority to the decedent, and on account of whose breach of duty, evidenced by acts of omission or commission, the accident occurred that resulted in the decedent's death.

2. **Removal of Causes—Sufficiency of Removal Petition.**—Where an action is properly brought against a non-resident and a resident defendant, if the non-resident defendant desires to remove the action on the ground of fraudulent joinder, his removal petition must set out the facts showing the joinder to be fraudulent.

3. **Removal of Causes—Practice.**—When a sufficient removal petition is filed in seasonable time, the action must be removed, and it is for the Federal and not the State court to determine whether the removal should be granted.

4. **Removal of Causes—Effect of Erroneous Ruling Dismissing Action as to Resident Defendant.**—Where an action is properly brought against a non-resident defendant, the fact that the trial court may erroneously, at the conclusion of the evidence, direct a verdict in favor of the resident defendant, does not authorize a removal of the action as to the non-resident defendant on the ground of diverse citizenship.

5. **Removal of Causes—Effect of Peremptory Instruction as to Resident Defendant.**—In a suit against a resident and a non-resident defendant properly joined, the fact that the trial court, at the conclusion of the evidence, directs a verdict as to the resident defendant, does not justify a removal on the part of the non-resident on account of diverse citizenship if exception is taken to the ruling of the court in directing a verdict and the appeal from this ruling is prosecuted in due time, as the resident defendant will be treated as a party to the suit until the question has been determined by this court.

6. **Master and Servant—Mines and Minerals—Duty of Inspection—Evidence of Care Exercised in Inspecting.**—In an action against a coal company for damages caused by the falling of slate in a

mine, the fact that the inspector of the coal company testified that he made a careful inspection, or the fact that he testified that the condition of the roof was such that a careful inspection would not have disclosed its defective condition, will not preclude the jury from finding that a careful inspection was not made or that the defective condition of the roof could have been discovered if a careful inspection had been made, if there are other facts and circumstances showing that a careful inspection was not made or that an inspection would have disclosed the danger.

P. D. BLACK and BLACK, BLACK & OWENS for appellant.

J. D. TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the administrator of James E. Prichard against the Carter Coal Company, a Delaware corporation, and Mike Donahue, its mine boss, who was a citizen of Kentucky, to recover damages for the death of James E. Prichard while in the employment of the company and working under the direction and control of the defendant Donahue.

At the time of his death Prichard was a track man, engaged in placing a derailed car on the track, and while so engaged Prichard and two other men were killed by a large and heavy piece of slate that fell from the roof of the mine.

On the trial of the case, there was a directed verdict as to Donahue and a judgment against the coal company.

On this appeal of the coal company one assignment of error relates to the refusal of the trial court to remove the action to the Federal court when the removal petition was first filed, and also upon a renewal of the motion, at the conclusion of the evidence, when the court determined that the plaintiff had failed to make out a case against Donahue and directed a verdict in his behalf.

The plaintiff's petition charged that the Carter Coal Company was the owner and operator of the mine in which Prichard came to his death, and that the defendant Donahue "was a servant and employe of the defendant company, working for it in the operation of its mine, acting in the capacity of a foreman or boss, and directing other servants of said company, including the said James E. Prichard, in the performance of their duties at work in said mine while at work for said company.

* * * That he was put to work by the defendant company and by the mine foreman, Mike Donahue, to replace a car on the track, which was wrecked and off the rails of the track in its mine, and while so engaged a large quantity of slate stone and earth fell upon him and so bruised and mangled him that he immediately died. * * * That the decedent was ignorant and inexperienced in mining and did not know of the dangers and hazards attending the work at which he was employed at the time of his injury, and the defendant Donahue knew that the said Prichard was ignorant and inexperienced and did not know of the dangers and hazards attendant upon the duties required of him as aforesaid. Nor did the defendant company or Donahue inform him of the dangerous character of the work at which he was placed or warn or caution him of the dangers attendant thereto. He said that the place where the said James E. Prichard was placed to work and where he received the injuries aforesaid was in a highly dangerous and unsafe place for the duties required of him, and was known by the defendant company and the mine foreman and boss, Donahue, to be highly dangerous and unsafe, but its unsafe condition was not known to him. He says that it was the duty of the defendant company and the defendant Donahue to inspect and make reasonably safe the working place of the said Prichard, which they failed to do, and that it was not the duty of the said Prichard to make safe his said working place. The plaintiff says that the injuries to the said Prichard were brought about and caused alone by reason of the joint and concurrent gross negligence of the defendant company and the defendant Donahue, in failing to inform or instruct said Prichard in the duties required of him and of the dangerous character of the work at which he was placed, and warn or caution him of the danger and hazard attendant upon the work required of him.''

In seasonable time after the defendants had been brought before the court by service of process, and before the Carter Coal Company had otherwise entered its appearance to the action, it moved the trial court to transfer the action to the Federal Court, upon the ground that it was a citizen of the State of Delaware and averred that ''the plaintiff, C. P. Prichard, has made the defendant, Mike Donahue, a party defendant herein with this petitioner for the sole purpose of undertaking to

deprive this petitioner of the right to remove the said action to the United States District Court for the Eastern District of Kentucky for trial, and to fix the only jurisdiction for said trial in the Knox Circuit Court, and all of same is done wilfully and wrongfully, and with fraudulent intent, while said plaintiff and his attorney know that said Mike Donahue is not liable in any way to plaintiff, and in no way concurred in any negligence, if any there was, which brought about the death of the decedent, Jas. E. Prichard, and that said Mike Donahue is bound herein as a party with the fraudulent intent and for no other purpose, and without reasonable grounds for plaintiff and his attorney to believe that the said Mike Donahue is liable to plaintiff for the death of the decedent, or that he was at all negligent in any way resulting in said death, and all of which is wrongful, unlawful, and fraudulent. The said action and controversy is wholly and entirely between plaintiff and your petitioner, and your petitioner's rights and the rights of the plaintiff herein can be determined wholly and entirely separate and independent of any cause of action, if any there be, against the defendant, Mike Donahue.''

Afterwards the motion to remove was overruled, and thereupon the defendants filed a joint answer traversing all the averments of the petition and pleading that the decedent assumed the risk of the injuries that caused his death; that his death was the result of an unavoidable accident, and that it was brought about by reason of his contributory negligence. The parties then went to trial, and when at the conclusion of the evidence for the plaintiff, the trial judge erroneously, as we think, ordered a directed verdict as to Donahue, the motion to remove the action was renewed on the petition filed at the beginning of the case. This motion was overruled, and we think the ruling of the court was correct in overruling the motion first made as well as the motion made at the conclusion of the plaintiff's evidence.

In Chesapeake & Ohio Ry. Co. v. Cockrell, Admr., 232 U. S., 146, the Supreme Court of the United States said, in considering the sufficiency of a petition for removal: ''The right of removal from a State to a Federal Court, as is well understood, exists only in certain enumerated classes of cases. To the exercise of the right, therefore, it is essential that the case be shown to be within

one of those classes, and this must be done by the veri-
fied petition setting forth, agreeably to the ordinary rules
of pleading, the particular facts, not already appearing,
out of which the right arises. It is not enough to allege
in terms that the case is removable or belongs to one
of the enumerated classes, or otherwise to rest the right
upon mere legal conclusions. As in other pleadings,
there must be a statement of the facts relied upon, and
not otherwise appearing, in order that the court may
draw the proper conclusion from all the facts, and that,
in the event of a removal, the opposing party may take
issue, by a motion to remand, with what is alleged in the
petition.   *   *   *

"So, when in such a case a resident defendant is
joined with the non-resident, the joinder, even although
fair upon its face, may be shown by a petition for re-
moval to be only a fraudulent device to prevent a re-
moval; but the showing must consist of a statement of
facts rightly engendering that conclusion. Merely to
traverse the allegations upon which the liability of the
resident defendant is rested or to apply the epithet
'fraudulent' to the joinder will not suffice; the showing
must be such as compels the conclusion that the joinder
is without right and made in bad faith."

As the removal petition was merely a traverse of the
plaintiff's petition, coupled with the charge that the
joinder was fraudulent, we think that when tested by
the rule of pleading laid down in this case it was not
sufficient when the motion was first made at a time when
Donahue was a party defendant. The substance of it
was that Donahue was fraudulently joined as a party
defendant for the sole purpose of depriving the peti-
tioner of the right of removal, although the plaintiff
and his attorney knew that Donahue was not in any way
liable to the plaintiff or guilty of any negligence contrib-
uting to the death of the deceased. As distinctly held in
the Cockrell case, the facts relied on to show a fraudu-
lent joinder must be set forth, and this the petition for
removal did not do. It is true the petition avers that
Donahue was not in any manner responsible for the
accident or resulting injury, but this unfounded aver-
ment did not entitle the foreign corporation to a re-
moval, because the petition, if its averments were true,
stated a good joint cause of action against Donahue and
the coal company. And as the petition, assuming its

averments to be true, stated a good joint cause of action against the defendants, the right of removal on the ground of diverse citizenship did not exist, in the absence of grounds showing a fraudulent joinder. But in this case a fraudulent joinder could not be shown, because the plaintiff had the right, as we will presently point out, to join Donahue, a resident of this State, as a defendant in this action, and if the allegations of the petition were supported by evidence, to prosecute the action against him to a final judgment.

The petition averred, and the evidence introduced on the trial showed, that Donahue was, as the representative of the coal company, acting in the capacity of mine boss, superior in authority to the deceased, and directly charged with the duty of looking after the safety of the mine. It also charged, and the evidence also showed, that Donahue directed the deceased to do the work he was doing at the time he was killed. It was further charged, and there was evidence to support it, that the accident was caused by the unsafe and dangerous condition of the mine roof and that this condition was known to Donahue and the coal company, or could have been known to them by the exercise of ordinary care. So that measured by the averments of the plaintiff's petition, which were supported by evidence, Donahue was jointly liable with the coal company, and the plaintiff had in good faith the legal right to join him as a defendant and prosecute the action against him to a judgment.

In Haynes' Admrs. v. C., N. O. & T. P. Ry. Co., 145 Ky., 209, this court said, in speaking of the joint liability of the employer and its superior servant to an employe who is injured or killed by the acts of omission or commission on the part of the superior servant involving a breach of duty to the injured party:

"In some jurisdictions the servant is not held accountable to third persons for non-feasance, but is for misfeasance; but a contrary rule and one that is in accord with the weight of modern authority prevails in this State. We do not recognize any distinction so far as the accountability of the servant is concerned between acts of misfeasance and non-feasance. If a servant performs in an unlawful manner an act that results in injury to a third person, or if a servant fails to observe a duty that he owes to third persons, and injury results from his fault of commission or omission, he is liable in

damages. There is no reason for making a distinction between acts of commission and omission when each involves a breach of duty. The servant is not personally liable in either case because the breach of duty was committed by him while acting in the capacity of servant, but responsibility attaches to him as an individual wrong-doer without respect to the position in which he acts or the relation he bears to some other person. It is the fact that the servant is guilty of a wrongful or negligent act amounting to a breach of duty that he owes to the injured person that makes him liable. It is not at all material whether his wrongful or negligent act is committed in an affirmative or wilful manner, or results from mere non-attention to a duty that he owes to third persons, and that it is entirely within his power to perform or omit to perform. There are innumerable situations and conditions presented in the every-day affairs of life that make it the duty of persons to so act as not to harm others, and when any person, whatever his position or relation in life may be, fails, from negligence, inattention or wilfulness to perform the duty imposed, he will be liable." Evans Chemical Works v. Ball, 159 Ky., 399; Murray Tel. Co. v. Cowherd, 148 Ky., 591, are to the same effect.

The right to join the servant and the master in actions of tort is also distinctly authorized by section 241 of the Constitution, providing, in part, that "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same;" and by section 6 of the Kentucky Statutes, providing, in part, that "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death from the person or persons, company or companies, corporation or corporations, their agents or servants, causing the same." And under authority of these constitutional and statutory provisions we have frequently announced the rule that an action to recover damages for wrongful death may be prosecuted jointly against the master and the servants guilty of the negligence complained of. C. & O. Ry. Co. v. Dixon, 104 Ky., 608; C., N. O. & T. P. Ry. Co. v. Finnell, 108 Ky., 135; Winston v. I. C. R. R. Co., 111 Ky., 954.

It may be further noticed that the Supreme Court of the United States has in many cases recognized the right of a plaintiff in an action for tort in a State court to join as defendants the master and servant whose negligence caused the injuries of which he complains, although the master may be a non-resident of the State in which the action was brought and the servant a resident defendant. Alabama Great Southern R. R. Co. v. Thompson, 200 U. S., 206, 50 L. Ed., 441; C., N. O. & T. P. Ry. Co. v. Bohon, 200 U. S., 221, 50 L. Ed., 448; C. & O. Ry. Co. v. Dixon, 179 U. S., 131, 45 L. Ed., 121; Southern Ry. v. Miller, 217 U. S., 209, 54 L. Ed., 732; C. B. & Q. Ry. Co. v. Willard, 220 U. S., 413, 55 L. Ed., 521.

So that under the pleadings and evidence, the trial court committed error in directing a verdict as to Donahue. But as the ruling in ordering a directed verdict as to Donahue was erroneous, the status of the coal company should be regarded the same as if the motion to direct a verdict in regard to Donahue had been overruled. The coal company will not be allowed to avail itself of this ruling of the trial court to secure an advantage that it could not have obtained except for this erroneous ruling.

There is, too, another reason for sustaining the correctness of the trial court's ruling in refusing to remove the case after the directed verdict had gone as to Donahue. The ground for this reason is the practice that appears to have been announced by the Supreme Court of the United States in American Car & Foundry Co. v. Kettlehake, decided in January, 1915, and reported in 236 U. S., 311, 58 Law Ed., ——. The opinion in that case shows that a suit was brought in a Missouri court by Kettlehake's widow against the car company, a New Jersey corporation, and Eilers and Martin, citizens of Missouri, to recover damages for the negligent killing of her husband by the movement of a train of cars operated by the car company. It was conceded that the action was properly brought jointly against the car company and Eilers and Martin, and we infer that Eilers and Martin were made parties defendant because they failed as employes of the car company, superior in authority to Kettlehake, to perform some duty they owed him.

On the trial of the case, at the conclusion of the evidence for the plaintiff, the trial court peremptorily instructed the jury to find for the defendants, Eilers and Martin, and thereupon the car company filed its petition for removal to the Federal Court, and moved the court to transfer the case upon the ground that as the action then stood it was simply a case between the plaintiff, a citizen of Missouri, and the car company, a citizen of New Jersey. The trial court, however, declined to remove the action, and on the appeal of the car company from the judgment against it this ruling was approved by the St. Louis Court of Appeals. From the judgment of the St. Louis court, holding that the case was not removable, an appeal was prosecuted to the Supreme Court of the United States. It also appears that, from the ruling of the trial court directing a peremptory instruction, the plaintiff appealed to the Supreme Court of Missouri, and this appeal was pending undisposed of in that court when this case was decided in the Supreme Court of the United States.

In holding that the trial court correctly ruled in refusing to remove the case after the peremptory instruction had been sustained as to Eilers and Martin, the court, after commenting on other cases, said this:

"Taking these cases together, we think it fairly appears from them that where there is a joint cause of action against defendants resident of the same State with the plaintiff and a non-resident defendant, it must appear to make the case a removable one as to a non-resident defendant because of dismissal as to resident defendants that the discontinuance as to such defendants was voluntary on the part of the plaintiff, and that such action has taken the resident defendants out of the case, so as to leave a controversy wholly between the plaintiff and the non-resident defendant. * * * The ruling of the court sustaining the demurrer to the evidence interposed by the resident defendants, practically determined the question of their liability, and, under the Missouri practice, as we understand it, there was a right to take an involuntary non-suit with leave to move to set it aside, and when that motion was overruled there was a remedy by appeal to the Supreme Court of Missouri, as was done in the present case, and the order is not final until the appellate court passes upon it.

"We cannot agree to the contention that upon this record, when the court had sustained the demurrers to the evidence as to Martin and Eilers and plaintiff took the non-suit, the case was so far terminated as between the plaintiff and the resident defendants as to leave a removable controversy wholly between the plaintiff and a non-resident corporation.

"The element upon which the decision in the Powers case, *supra,* depended—the voluntary dismissal and consequent conclusion of the suit in the State court as to the resident defendants—is not present in this case."

It also appears from the opinion that the Missouri practice when a peremptory instruction is given by the trial court is not materially different from ours. Under our practice an appeal lies from the ruling of the trial court in directing a verdict as to one or more of the defendants when there is an exception taken to this ruling, as there was in this case, and on this appeal the correctness of the ruling of the trial court is drawn in question by counsel for the plaintiff below as under our practice he has the right to do.

Adopting the view expressed by the Supreme Court in this case, we think that when the plaintiff properly states a joint cause of action against a non-resident and a resident defendant, the fact that the trial court gives a peremptory instruction as to the resident defendant, whether this ruling be erroneous or not, does not then entitle a non-resident defendant to removal of the action on the ground of diverse citizenship, if the plaintiff excepts, as he may do, to the ruling of the court releasing the resident defendant and prosecutes, as he may do, from such ruling an original appeal to this court or a cross-appeal on the appeal of the defendant.

At any rate, if the plaintiff excepts to the ruling releasing the resident defendant, and the correctness of this ruling is brought to the attention of this court either on the appeal of the plaintiff or on the appeal of the non-resident defendant from a judgment against it, it could not be said that the resident defendant, who was properly joined in the first instance, did not remain a party defendant until this court had finally determined the correctness of the ruling of the trial court. So that in no state of case that we can think of is the coal company in a position to complain of the ruling of the trial court in refusing to remove the action when the verdict

had gone against Donahue. If this directed verdict had been properly ordered by the trial court, Donahue, who was properly joined as a defendant, would continue to remain a defendant until this court, on appeal, had approved the ruling of the trial court in directing a verdict.

It is urged, however, that the trial court should have directed a verdict in favor of the coal company on the ground that the evidence showed it was the duty of the deceased to inspect the roof of the mine, and, therefore, if the roof was in an unsafe condition, his failure to observe it and save himself from danger was such contributory negligence as would defeat a recovery.

The evidence was somewhat conflicting as to the duty of inspection imposed upon the deceased, but the weight of it, we think, tends to show that it was not his duty to inspect the mine at the place where he was working. The coal company had inspectors, the chief of whom was Donahue, the mine boss. It also had timber men, and Prichard was not engaged in mining coal at the time of his death, but was engaged as a track man, and the custom as to the duty of the miners engaged in removing coal to inspect the roof did not extend to laborers such as Prichard, who were engaged in a distinct character of work from that of mining coal.

It is true it was the duty of the deceased to exercise ordinary care for his own safety, although not charged with the duty of inspection, and if the unsafe condition of the roof at the place where he was working was so obvious as that a person of ordinary intelligence, in the exercise of ordinary care for his own safety, could not have failed to discover it, this would have amounted to such contributory negligence as would have defeated a recovery. This, however, was a question of fact that should have been and was submitted to the jury. The evidence, that the duty of inspecting the roof of the mine at the place where he was working rested upon the deceased, was not at all so convincing as to justify the court, as a matter of law, to direct a verdict for the coal company. Nor was the evidence as to the dangerous and unsafe condition of the roof of the mine so conclusive as to justify the legal presumption that the deceased, in the exercise of ordinary care, should have discovered it. There was evidence of the dangerous condition of the roof and evidence that this condition had

been brought to the attention of one of the men whose duty it was to inspect and protect the roof. There was also evidence tending to show that the roof at this place was not sufficiently protected by timber, and that Donahue, who was chief inspector, had not examined the roof on the day the slate fell.

A further contention of the coal company is that if the duty of inspecting the roof of the mine in a proper and sufficient manner devolved upon it, having discharged its duty in this respect, it should not be held accountable for an accident that happened notwithstanding its careful inspection. In support of this view there was evidence tending to show that on the day preceding the accident the roof at this place was inspected and found to be in a safe condition. There was further evidence tending to show that the piece of slate that fell was so large and thick that the usual and customary inspection would not have disclosed its defective condition. Resting on this evidence, the argument is made, first, that the coal company had fulfilled its duty of inspection and exercised the required care in respect thereto; and, second, that when the most careful inspection would not have disclosed the defect in the roof, the injuries resulting from the fall of the slate must be attributable to accidental causes that no amount of care could have guarded against.

The answer to this argument is that it was the duty of the coal company to exercise ordinary care to furnish to the deceased a reasonably safe place in which to work, and this duty carried with it the duty of inspection and the duty of supporting the roof with timbers in the event an inspection disclosed the necessity for timbering. And there was evidence conducing to show that the roof was unsafe and that this condition, by the exercise of ordinary care, could have been discovered in time to have protected the roof, if ordinary care had been exercised to adopt this method of safety after the attention of the coal company was called to the necessity for supporting the roof.

In cases like this where the law imposes upon the mine owner the duty of inspection, and the further duty of supporting the roof by timber if inspection shows this to be necessary, it cannot escape liability for accident unless it appears that the duty of inspection was imposed upon the injured person, or it is shown that the

danger was so obvious as that a person of ordinary intelligence could, in the exercise of ordinary care, have discovered the peril. It may be that the roof was inspected, but this was not conclusive evidence of the exercise of the required degree of care on the part of the coal company. It does not follow from the mere fact that the inspector decides that the roof is safe and therefore supports are not necessary, that this will exonerate the mine owner, in the event an injury happens by the falling in of the roof. As was said in Williams Coal Co. v. Cooper, 138 Ky., 287:

"If in cases like this the master could be relieved of liability upon the statement of the person charged with the duty of inspection that in his judgment the place was safe, there would be but few cases in which an employe who relied upon the inspection, and was injured, could recover, as it is fair to assume that in every instance the person charged with the duty of inspection would say that he had performed it. But his statement is not conclusive. It was a question for the jury to say from the evidence whether or not the place was reasonably safe. And in considering this question they had the right to give such weight as they deemed proper to the statement of the inspector. They may or may not believe from it that the master discharged his duty in furnishing a reasonably safe place."

The same principle was announced in Huddleston's Admr. v. Straight Creek Coal & Coke Co., 138 Ky., 506, where it was said: "The jury have the right to hear and consider, not only the evidence from the mouths of witnesses as to what they did and what was done, but they have also the right to hear and consider other evidence from witnesses who are qualified to testify as to the physical condition of the place or appliance before, at the time, and immediately after the accident, and the jury may from the facts and circumstances thus proven be warranted in concluding that they are entitled to more weight than the personal evidence of the witnesses whose testimony was in contradiction of these facts and circumstances."

The instructions are complained of, but we think they submitted to the jury all the substantial issues in the case.

The judgment is affirmed.