# Gibraltar Coal Mining Company v. Miller.

(Decided February 18, 1930.)

EAVES & SANDIDGE for appellant.

T. O. JONES for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In this action by N. L. Miller against the Gibraltar Coal Mining Company to recover for personal injuries,

the jury awarded plaintiff damages in the sum of $1,000. The coal company appeals.

The facts are these: Appellant owns and operates a coal mine at Brownsville, in Muhlenberg county. On May 5, 1927, the day of the accident, the mine was not in operation, but Miller and others were called on to do some extra work in the mine at a place some distance from the bottom of the shaft, and accessible only through the main entry. Accompanied by the assistant mine foreman, Quint Thompson, Miller went to the bottom of the shaft and boarded one of the mining cars which was drawn by a mule driven by Herbert Gootec. The other men in the crew rode in other cars, some going before and some after the car driven by Gootee. Thompson and Miller were sitting on the bottom of the car facing each other with their backs against the side of the car. Miller carried a lighted lamp in his hand, and his head and shoulders were inclined forward. On reaching a point on the main entry about 150 yards from the bottom of the shaft a quantity of slate and other debris fell from the roof of the entry and struck appellee on the head and shoulders, causing the injuries of which he complains, and doing considerable damage to the car.

Appellant's first contention is that the trial court should have sustained its motion for a peremptory instruction. The basis of this contention is that there was no evidence that the slate at the place from which it fell was loose or might fall even a minute before it did fall, and therefore a failure of proof that appellant either knew, or by the exercise of ordinary care could have known, that the condition of the roof was dangerous and might fall. On the contrary it is insisted that the proof is conclusive and uncontradicted that appellant used all the care known to the mining industry to ascertain whether or not the roof was safe. The evidence was uncontradicted that, when the coal was first removed, the roof of the entry was only about six feet high, and the exposed formation consisted of black slate. All the black slate had been removed, and the next formation consisted of gray slate and possibly some rock. L. J. Turley, a coal miner, who worked for appellant at the time, testified that the slate was loose, stayed up as long as there was anything to hold it and would not have fallen if it had been properly timbered. He had timbered the entry in places and did not know whether there

was anything to indicate that the rock was about to fall. Thompson, the assistant mine foreman, testified that the mine foreman looked after the timber of the entries, and, if the main entry had been properly timbered, it could not have fallen. On each side of the place from which the slate fell the roof had been timbered, but he could not say how close to that place. He had not seen anything to indicate that the rock might fall. Herbert Gootee said he had never seen anything wrong with that part of the roof before, but it might fall at any time. "The ninth entry just falls without any warning at all, liable to fall at any time." Milton Lee, who was employed in the mine at the time of the accident, testified that the rock and dirt fell from the roof of the entry because there was not any timber there to hold it. John Grigsby, appellant's mine foreman and witness, testified that he inspected the roof of the entry the day before the accident. He did this by sounding and by looking at it with his eye, and found nothing that indicated that the roof was dangerous or might fall. On the contrary the roof at the place of the accident, so far as he was able to determine, was perfectly safe. There had been a timber there prior to the accident, but it was not used because the roof was dangerous, but was put there to hang trolley wires on. It was not customary to timber a roof in the main entry at every place from which the black slate had fallen, and from his inspection it was not necessary to timber at that point. On being asked what caused the roof to fall he said, "Well I suppose it just got loose and fell. About all the reason I can give for it." He also added that there was nothing to prevent it from falling when it did get loose. Noah Russell, mine foreman at the time of the accident, testified that he inspected and sounded the roof of the entry at the place of the accident on May 4, the day before the accident, and there was nothing there then to indicate that the slate was loose or might possibly fall. On cross-examination he stated that it had been several years since the black slate had fallen from the roof at that point. Where the black slate had fallen the remaining roof does not fall every time unless timbered. On being asked what caused the roof to fall he said: "I couldn't say, same thing that causes it all to fall. It becomes loose and falls."

The accident occurred in the main entry, and therefore at a place where it was the duty of appellant, not only to inspect the roof of the mine in the exercise of

ordinary care to provide a safe place for its servants to work, but also to support the roof in a proper manner, if necessary to make it safe. Carter Coal Co. v. Prichard's Adm'r. 166 Ky. 776, 179 S. W. 1038. Though appellant's mine foremen say that on the day before the accident they inspected and sounded the roof of the entry at the place of the accident, and that in their judgment the place was safe, we have ruled in a number of cases that such evidence is not a conclusive showing of the exercise of the required degree of care, but the question is still for the jury, where there is evidence that the place was unsafe. Carter Coal Co. v. Prichard's Adm'r, supra; Williams Coal Co. v. Cooper, 138 Ky. 287, 127 S. W. 1000; Huddleston's Adm'r v. Straight Creek Coal & Coke Co., 138 Ky. 506, 128 S. W. 589. While it is true that no witness testified as to the condition of the roof at the place of the accident, there was evidence that after the removal of the black slate the remaining layer of gray slate was loose and fell or was likely to fall at any time. Not only so, but, if we accept as true the statements of the mine foremen that they inspected the roof and found it all right, their evidence confirms, rather than disproves, the evidence that the roof of the mine was in such condition that it would fall at any time without exhibiting any cracks or otherwise indicating that it was likely to fall. In the circumstances we conclude that the question of negligence was for the jury, and that the court did not err in overruling appellant's motion for a peremptory instruction.

By instruction No. 1 the jury were told that it was the duty of the defendant to furnish plaintiff a reasonably safe place in which to perform the work assigned to him, and to furnish a reasonably safe means and way to go to and from the place plaintiff was directed to work in defendant's mine. It must not be overlooked that the master is not an insurer of the servant's safety, but is only required to exercise ordinary care to furnish him a reasonably safe place for work. Interstate Coal Co. v. Shelton, 152 Ky. 92, 153 S. W. 1; New Bell Jellico Coal Co. v. Oxendine, 155 Ky. 840, 160 S. W. 737; Daniels v. Houston, Stanwood & Gamble Co., 161 Ky. 527, 170 S. W. 1190. As the instruction went further and imposed upon defendant the absolute duty to furnish plaintiff a reasonably safe place for work, it follows that the instruction was erroneous. Nor do we think that the error was cured by instructions A, B, and C, given on motion of

appellant. By instruction A the jury were told to find for the defendant, unless they believed from the evidence that the defendant failed to inspect the roof of the entry at the place in controversy, while by instruction C they were told to find for the defendant, unless they believed from the evidence that the defendant failed to use ordinary care to inspect the roof of the entry at the place where plaintiff was injured by using the usual and customary methods for making such inspection. It is apparent that neither of these instructions qualifies the absolute duty imposed on defendant by instruction No. 1. By instruction B the jury were told to find for the defendant, unless they believed from the evidence that defendant, before plaintiff was injured, knew, or by the exercise of ordinary care could have known, of the defective condition of the roof, if it was defective. This instruction is the mere converse of a portion of instruction No. 1, and is not sufficient to bring to the attention of the jury that defendant's duty with respect to the safety of the roof at the place of accident was less than that imposed in the preamble of instruction No. 1.

In view of another trial it is proper to add that, inasmuch as inspection is not the sole measure of appellant's duty, neither instruction A nor instruction B should be given.

Since the case is to be tried again, it is not necessary to determine whether the verdict is excessive. However, it is proper to advert to the fact that the evidence does not show that appellee's injuries are permanent. That being true, the instruction on the measure of damages should not authorize a recovery for permanent impairment of his power to earn money. The most that can be said under the evidence is that appellee lost time, and also suffered a temporary impairment of his power to earn money. In the circumstances he is entitled to recover only for his mental and physical pain and suffering, for his lost time, that is, the time he was not at work on account of his injury, and thereafter for the temporary impairment of his power to earn money during the period that the jury may believe such impairment exists. Moreover, the instruction should make it plain that the allowance for temporary impairment of his power to earn money begins at the expiration of the period for which he is allowed for lost time.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.