## Bannon v. Louisville Trust Company, Administrator of Pat. Bannon, Jr., et al.

(Decided November 12, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1.  Witnesses—When Testimony of Accepted as True.—The rule that the testimony of a witness must be accepted as true applies only when the witness is unimpeached and there is no evidence to the contrary.

2.  Misconduct of Counsel—Bill of Exceptions.—Misconduct of coun-

sel in their opening statements and closing arguments to the jury cannot be considered unless shown by bill of exceptions.

3.   Stock—Transfer—Undue Influence—Action to Set Aside—Instructions—Assumption of Fact to be Decided.—Where in an equitable action to set aside a transfer of 'stock on the ground of undue influence, the question is submitted to the jury for a special finding of fact, an instruction submitting the question in the form "Was the transfer, etc., obtained by M. J. Bannon from his father to himself by the use or exercise of undue influence over his father, Patrick Bannon, Sr.?" does not assume that the transfer was obtained.

4.   Stock—Transfer—Action to Set Aside—Instruction—Error.—In an equitable action to set aside a transfer of stock on the ground of unsoundness of mind and undue influence, the issues being equitable and not legal, and the verdict of the jury being only advisory, the judgment of the chancellor confirming the special finding of facts by the jury will not be reversed on the ground that the instructions submitting the questions to be decided did not indicate where the burden of proof lay.

5.   Husband and Wife—Husband a Witness—Admissibility of Transactions Had and Statements Made in His Presence.—Where the husband is a witness for his wife not on the ground of agency, but on the ground that she did not testify, and the action was one which she might have brought as a single woman, the mere fact that he is a witness for his wife does not clothe him with the power to represent her to the extent of rendering admissible transactions and statements occurring in his presence which would have been admissible if occurring in the presence of his wife.

O'DOHERTY & YONTS and KOHN, BINGHAM, SLOSS & SPINDLE for appellant.

McDERMOTT & RAY, O'CONNOR & O'CONNOR, J. W. S. CLEMENTS, O'NEAL & O'NEAL and J. T. BAKER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is an appeal from a judgment setting aside a transfer of certain shares of stock in the P. Bannon Sewer Pipe Company and the Kentucky Vitrified Brick Company, made by Patrick Bannon to his son, M. J. Bannon. There have been two trials. On the first trial the questions involved were submitted to the jury for a general verdict. The jury found in favor of plaintiffs. On appeal to this court, the judgment was reversed and cause remanded. See Bannon v. Patrick Bannon Sewer Pipe Company, 136 Ky., 556. On that appeal the court

held that while there was no evidence of fraud on the part of M. J. Bannon, there was sufficient evidence of unsoundness of mind on the part of Patrick Bannon, and of undue influence exercised by M. J. Bannon over his father to justify a submission of these questions to the jury. At the same time the court held that as the action was in equity, the questions should be submitted to the jury not for a general verdict, but for a special finding as to each. On the return of the case, the chancellor, after defining unsoundness of mind and undue influence in conformity with the opinion of this court, submitted to the jury the questions of unsoundness of mind and undue influence, and the further question whether or not plaintiffs knew on January 1, 1904, that M. J. Bannon had received on September 2, 1902, 250 shares of stock of the Patrick Bannon Sewer Pipe Company and 200 shares of stock of the Kentucky Vitrified Brick Company. The jury answered the first two questions in the affirmative, and the third question in the negative. Thereupon the chancellor entered judgment, setting aside the transfers of stock, and the defendant, M. J. Bannon, appeals.

First, it is insisted that the evidence is not sufficient to sustain the verdict, and also contended that because of the direct and positive evidence of Mr. Taylor, who was present when the power of attorney was drawn, to the effect that Patrick Bannon was of sound mind, and no undue influence was exercised upon him, the case is one calling for a peremptory instruction in favor of the defendant. The rule that the testimony of a witness must be accepted as true applies only in the event that he is unimpeached, and there is no evidence to the contrary. While it is true that there is no attempt to impeach the testimony of Mr. Taylor, yet all of the facts and circumstances detailed by plaintiffs' witnesses, tending to show unsoundness of mind on the part of Patrick Bannon, and undue influence over him exercised by M. J. Bannon, constituted evidence tending to rebut and overcome his testimony. That being true, his evidence, while strong, is not conclusive, because he was the only person present. While it may be true that he, in this particular instance, testified to the exact conditions that existed, yet, if it were the general rule that the testimony of a witness was conclusive merely because he alone was present when the particular transaction called into question took place, then it would not matter how incapable one was of transacting business, or what abso-

lute and complete dominion or control another had over him, just so the other could show by one witness who was present at the time of the transaction that the person whose transaction was called in question was of sound mind, and that no undue influence was exercised over him. As such a witness could often be found, it is manifest that such a rule would place the incapable and weak entirely in the power of the strong and designing. Such, however, is not the law. It matters not how clear, distinct and convincing the testimony of the witness who was present when the transaction took place, may be, the effect of his evidence may be overcome by showing facts and circumstances both before and after the transaction tending to show unsoundness of mind or undue influence. While it is true that in addition to the testimony of Mr. Taylor, a number of reputable witnesses who knew Patrick Bannon have testified that he was a man of strong mind, and was not subject to the control of, or influenced by, his son, M. J. Bannon; yet a like number of witnesses for plaintiff testified to numerous facts and circumstances from which the jury could have inferred that Patrick Bannon was not of sound mind, and that M. J. Bannon exercised undue influence over him. In view of the general verdict of the jury on the first trial in favor of the plaintiffs, and the special finding of facts on the questions of unsoundness of mind and undue influence by the jury on the second trial, confirmed by the judgment of the chancellor, and in view of the numerous facts and circumstances tending to show unsoundness of mind and undue influence, we are not disposed to disturb the judgment on the ground of insufficient evidence, or because the evidence preponderates in favor of defendant.

Another ground urged for reversal is the misconduct of counsel for plaintiffs in their opening statements and closing arguments to the jury. While the alleged improper remarks, both in the opening statements and closing arguments, are referred to in the motion and grounds for new trial, accompanied by the statement that they more fully appear and are set out at large in the stenographic report of counsel's opening statements and arguments to the jury, the bill of exceptions does not contain a stenographic report of the opening statements or closing arguments, or of the alleged improper remarks; nor are the alleged improper remarks otherwise set forth in the bill of exceptions and certified to by the

trial court. It is well settled that the only way in which matters occurring on a trial in the circuit court may be brought up for review in this court is by bill of exceptions, and that the misconduct of counsel cannot be considered unless shown by the bill of exceptions. Louisville Railway Co. v. Gaar, 112 S. W., 1130. The case of Warren v. Nash, 24 Ky. L. Rep., 479, to the extent that it announces a contrary doctrine, is hereby overruled.

It is next argued that the court erred in its instructions to the jury, and in refusing certain instructions offered by defendant. The instructions offered by the defendant and refused by the court are as follows:

"1. The court instructs the jury that the delivery of the stock certificates, in the evidence referred to, to Patrick Bannon, Sr., for the stock originally subscribed for in the articles of incorporation of the Kentucky Vitrified Brick Company and the P. Bannon Sewer Pipe Company was not necessary to establish his title to the said stock and its non-delivery, if it was not delivered to him, did not affect his right."

"2. The court instructs the jury that the law presumes that Patrick Bannon, Sr., was of sound mind on September 2, 1902, and unless the jury shall believe from the evidence that he was not of sound mind, on the said date, the jury should find that he was of sound mind."

"3. Unless the jury shall believe from the evidence that M. J. Bannon had undue influence over his father, Patrick Bannon, within the sense and meaning of the term, as elsewhere defined in these instructions, they should find that said M. J. Bannon did not have undue influence over the said Patrick Bannon."

"4. Unless the jury shall believe from the evidence that M. J. Bannon exercised undue influence over Patrick Bannon, Sr., at the time or in the procurement of the assignments of the stock to him of the Kentucky Vitrified Brick Company, and of the P. Bannon Sewer Pipe Company, of September 2, 1902, they should find that said assignments were not made or procured by the undue influence of the said M. J. Bannon."

The court gave the following instructions:

"1: The court instructs the jury that if you believe from the evidence that Patrick Bannon, Sr., on September 2, 1902, when he transferred to M. J. Bannon 250 shares of the stock of the P. Bannon Sewer Pipe Company, and 200 shares of the stock of the Kentucky Vitrified Brick Company, did not have mind and mental ca-

pacity sufficient to understand his property rights and the character, object and nature of the transfer of the stock, and the mental ability to transfer same, according to a definite desire of his own, he was of unsound mind; but if you believe from the evidence that, at that time, he did have mind and mental capacity sufficient to understand his property rights and the character, object and nature of the transfer of the stock, and the mental ability to transfer it according to a definite purpose and desire of his own, he was not of unsound mind."

"2. The court instructs the jury that any influence obtained over the mind of Patrick Bannon, Sr., by M. J. Bannon, to such an extent as to destroy his free agency and to constrain him to do, against his will, what he would otherwise refuse to do, is undue influence, whether such influence was obtained directly or indirectly, or whether at one time or another, but any reasonable influence obtained by acts of kindness, or by argument addressed to the understanding, is not in law undue influence."

"3. Subject to the above instructions, you are now directed to answer in your verdict each of the following question, yes or no.

"1. Was the transfer of the 2nd day of September, 1902, by Patrick Bannon, Sr., to M. J. Bannon, of 250 shares of stock of the P. Bannon Sewer Pipe Company, and 200 shares of stock of the Kentucky Vitrified Brick Company, obtained by M. J. Bannon from his father to himself by or through the exercise of undue influence over his father, Patrick Bannon, Sr.?"

"2. Was Patrick Bannon, Sr., of unsound mind on September 2, 1902, when he transferred to M. J. Bannon 250 shares of stock of the P. Bannon Sewer Pipe Company and 200 shares of stock of the Kentucky Vitrified Brick Company?"

"3. Did the plaintiffs know, on January 1, 1904, that M. J. Bannon had received, on September 2, 1902, 250 shares of stock of the P. Bannon Sewer Pipe Company, and 200 shares of stock of the Kentucky Vitrified Brick Company?"

The particular objections urged against the court's instructions are that in the first question the court assumed that the transfer of the stock was obtained by M. J. Bannon from his father to himself. It is only necessary to read the instruction in order to see that such is not the case. The direct question is put: "Was the

transfer, etc., obtained by M. J. Bannon from his father to himself by the use or exercise of undue influence over his father, Patrick Bannon, Sr.?'' To answer the question in the affirmative, the jury had to find that the transfer of stock was not only obtained by M. J. Bannon, but was obtained by the use or exercise of undue influence over his father.

Counsel for defendant earnestly contend that question No. 2 is fatally defective because it does not give to defendant the benefit of the presumption of sanity on the part of Patrick Bannon by indicating to the jury where the burden of proof lay, and that the court should have given instructions similar to those asked for by defendant. It is true that in cases similar to this, where the questions involved were submitted to the jury for a general verdict, this court, in a few cases, has held instructions erroneous that were silent as to the presumption of sanity, but the rule now in force in such cases is that the court should not instruct the jury as to presumptions of law, but should simply frame the instructions so as to indicate the burden of proof without expressly referring to it. Henning, et al. v. Stephenson, et al., 118 Ky., 318. Following this view, it is held that an instruction in a will case which directs the jury to find the will in question to be the will of the testator unless they believe that at the time of the execution of the will the testator was of unsound mind, is the proper form in which to indicate the presumption of sanity. It is conceded that under the above rule the court should have, in its first instruction, told the jury to find Patrick Bannon, Sr., of sound mind unless they believed from the evidence that he did not have mind and mental capacity sufficient to understand his property rights, and the character, object and nature of the transfer of the stock, and the mental ability to transfer same according to a definite desire of his own. By the instruction given, the court told the jury that if they believed from the evidence that Patrick Bannon, when he made the transfers of stock, did not have mind and mental capacity sufficient to understand his property rights, and the character, object and nature of the transfer of the stock, and the mental ability to transfer same according to a definite desire of his own, he was of unsound mind. In other words, the instruction given required the jury to believe from the evidence certain things before they could find Patrick Bannon, Sr., of unsound mind, while

the instruction which ·it is· claimed should have been given required the jury to· find Patrick Bannon, Sr., of sound mind unless they believed certain things from the evidence. Upon· the first trial of this case, where the questions at issue were submitted for a general verdict, and the instructions conformed to the view now contended for by defendant, there was a finding in favor of plaintiffs. ·Upon ·the second trial, where the question was submitted in· the manner above set out, there was a finding by another jury that· Patrick Bannon, Sr., was of unsound mind, and the transfers of stock were ob-· tained by undue influence, exercised by M. J. Bannon. · We are, therefore, not inclined to hold that had the in,- structions upon the second trial been given in the form contended for by defendant, the jury would have reached a different conclusion, for there is really no practical, difference between the two instructions. Furthermore, the issues in this case are not legal issues, calling for a general verdict, but equitable issues, in the decision of which the chancellor might or might not, in his discretion, call for the assistance of ·a jury. Ford v. Ellis, 21 R., 1837; Kennedy v. Tenbrook, 11 Bush, 254; Blakey v. Johnson, 13 Bush, 200. The verdict was only advisory, and, after all, it was for the chancellor to enter the appropriate judgment. Having approved of the finding of facts by the jury, and entered judgment thereon, we conclude that the defendant was not prejudiced by the form of the instruction; for, aftei all, it required the approval of the chancellor to render effective the finding of the jury.

Lastly, it is insisted that the court erred in excluding certain evidence offered by defendant with reference to transactions had and statements made by ·the decedent, Patrick Bannon, Sr., in the presence ·of Robert Burrell, the husband of one of the plaintiffs. The argument is made that the transactions and statements, if made in Mrs. Burrell's presence, would have been admissible, and that having declined to testify herself, and having offered her husband as a witness, the evidence referred to should have been admitted under the common law rule of unity. It is not contended that Burrell was the agent of his wife, or that he was introduced as her agent. He was a competent witness because his wife did not testify, and the suit was one which she might have brought as a single woman. In thus testifying, he stood on the same footing as any other witness, and the trans-

actions and statements referred to were no more admissible because made in his presence than if they had been made in the presence of any other witness. In other words, the fact that he was a mere witness for his wife did not clothe him with power to represent her to the extent of rendering admissible transactions and statements occurring in his presence which would have been admissible if made in the presence of his wife.

Judgment affirmed.