## Louisville & Nashville Railroad Company v. Sinclair.

(Decided October 18, 1916.)

### Appeal from Scott Circuit Court.

1. Trial—Question for Jury—Instructions.—Where the evidence upon an issue is contradictory, the question is one for the jury and should be submitted to it under proper instructions.

2. New Trial—When Will Not Be Granted.—A new trial will not be granted upon the ground that the verdict of the jury is not sustained by a sufficiency of evidence, unless it is palpably and flagrantly against the weight of the evidence.

3. Trial—Evidence—Copies of Letters—When Error to Permit to be Read.—Where a party, which is maintaining a suit against a corporation, requests agents of the corporation, by letter, to give him the names of the persons who were present when the transaction out of which the action grew occurred, and after the occurrence of the transaction, and the agents fail to answer, it is error to permit copies of the letters to be read as evidence, as the fact of the requests can, in no way, shed any light upon the facts of the transaction.

4. Evidence—Hearsay—Res Gestae.—The declaration of a third person or bystander, and who is not a party to the transaction in issue, and made after the transaction, is merely hearsay, and not admissible as part of the res gestae.

5. Damages—Personal Injuries—Impairment of Earning Power.—Where, in a petition in an action for a personal injury, it is alleged that the injury is a permanent one, and there is evidence to support the averment, it is sufficient upon which to base an instruction to authorize the jury to find damages for the permanent reduction of the power to earn money, as an impairment of the power to earn money is a necessary incident of a permanent injury.

BENJAMIN D. WARFIELD, EMMETT M. DICKSON and BRADLEY & BRADLEY for appellant.

JAMES F. ASKEW and LLEWELLYN F. SINCLAIR for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 2nd day of June, 1914, the appellee, Mrs. Fannie Sinclair, who is a married woman and at that time a resident of Georgetown, purchased a ticket from the appellant, Louisville & Nashville Railroad Company, which entitled her to ride as a passenger upon its train and over its line of railroad from Frankfort, Kentucky, to Nashville, Tennessee. In company with her sister-in-law, Mrs. Llewellyn Sinclair, she came from her home at Georgetown to Frankfort on the morning of June 2nd, over the Frankfort & Cincinnati Railroad, and arrived at Frankfort at 9:56 a. m. on that morning. At that time it seems there was an arrangement by which a passenger coach was, upon each day, brought from Richmond, Ky., to Frankfort, over the line of the Louisville & Atlantic Railroad. At the latter place it was detached from the train which brought it from Richmond and was placed upon a track in appellant's yards. When the regular train of appellant from Lexington arrived at Frankfort, it would pass this detached coach and after passing through one or more switches, would get upon the same track upon which the detached coach stood, when it would back to and couple on to the detached coach and carry it as a part of its train to Louisville. Only a few minutes intervened between the arrival of the coach from Richmond and the arrival of the Frankfort & Cincinnati train from Georgetown and appellant's regular south bound train from Lexington. On the morning in question the coach, which was brought over the Louisville & Atlantic Railroad from Richmond, was placed upon a track in appellant's yards, at a point a short distance to the east of appellant's depot, at Frankfort, and between it and the tunnel, through which, appellant's train from Lexington arrived at Frankfort. The train from Richmond arrived at Frankfort prior to the arrival of the train from Georgetown, and the coach, to be attached to appellant's train from Lexington, had been detached and placed in position upon the track for some minutes before the arrival of the train from Georgetown. When the latter train arrived at Frankfort, the appellee and her sister-in-law came out of it and went into the waiting room of appellant in the depot, but immediately approached the ticket agent of appellant in his office in the depot and requested information as to the train which they would take to continue their journey to Nashville, over the appellant's road. The ticket agent

pointed out to them the coach standing upon the track; told them that was the coach in which they would ride and directed them to get into it. The evidence is con-, tradictory as to whether the train from Lexington had then arrived in the Frankfort yards. The appellee and her companion, however, immediately proceeded to the coach as directed and entered it from the end, which was to the west. At the time of their entering into the train several passengers were in the coach and were sitting upon the seats near to the door to its western end. The appellee claims that she and her companion immediately upon entering the coach proceeded to select a seat near the middle of the coach and went immediately to it, wherein they both proposed to be seated. Appellee was walking in front, and when she arrived at the seat, she stepped aside to permit her sister-in-law to enter first, as the sister-in-law desired to sit against the window; her sister-in-law at once entered between the seats and sat down upon the seat at the end against the window; appellee was proceeding to sit down upon the end of the seat next to the aisle in the coach, but before she had a reasonable opportunity in which to sit down, the train of appellant, which had arrived from Lexington and which consisted of an engine and four or five cars, backed against the coach, in which she was, for the purpose of attaching it to the train; that the train men, handling appellant's train, carelessly and negligently backed the train against the coach with great, unusual and unnecessary force; that the coupling was made with such unusual and unnecessary force, that the collision between the train and the coach was so unnecessarily and unusually violent that she was thereby thrown to the floor of the car, headlong, and with such force, that the contact broke one of her hips and she was unable to arise without assistance. She was unable to continue her journey, and after a short space of time, she was lifted up by two of the passengers in the coach and was borne by them into the depot, from which place she was carried to a hospital, where she was confined for five weeks. She was then taken to her home and from thence to Lexington, where she remained in a hospital for five or six weeks; that she was caused to endure much mental and physical pain and suffering by her injuries; that when the fracture of her hip healed, one of her limbs was shorter by an inch to an inch and three-quarters than the other;

that she was caused by the injury to be a permanent cripple and compelled to use crutches at all times in walking; that her injury was permanent, and since she had received it she had been unable to perform the work of housekeeping, which she had theretofore done. To recover damages for the injuries sustained, she instituted this action.

The appellant's answer consisted of a traverse of the averments of the petition and amended petition and a plea of contributory negligence upon the part of appellee, without which it was alleged that the injuries received by appellee would not have been sustained. The alleged contributory negligence was denied by a reply. The contention of appellant was, that the coupling of cars was one of usual character and was made without unnecessary or unusual force or violence; that appellee had contributed to her injury by negligently standing in the car and failing to secure a seat before the coupling of the train and coach was attempted; that no more force was used in making the coupling than was usual and necessary for the purpose; that the servants of appellant were in no wise negligent, and that appellee's injuries would not have been sustained, but for her own negligence. Quite a number of witnesses gave testimony upon the issues and their evidence was exceedingly conflicting. A trial of the action before the court and jury resulted in a verdict of the jury for the appellee, by which the damages which appellee had suffered were fixed at the sum of $8,000.00, and a judgment of the court was rendered in accordance with the verdict of the jury. The appellant's motion for a new trial was overruled and hence this appeal.

The grounds for a new trial embrace many things, but the briefs for appellant only make mention of the following grounds, and rely upon them, only, for a reversal of the judgment, viz.:

(1) The appellant was not guilty of any negligence, and a verdict for it ought to have been directed at the close of the evidence for appellee.

(2) The appellee was contributorily negligent, as a matter of law, and for that reason a verdict ought to have been directed for appellant.

(3) The verdict is not sustained by a sufficiency of evidence.

(4) The court erred in the admission of incompetent evidence for appellee.

(5) The damages are grossly excessive, due to passion and prejudice on the part of the jury.

(6) The court erred in instructing the jury as to the measure of damages.

As the case will have to undergo another trial for reasons hereafter stated, a particular statement or discussion of the evidence will not be made, but as to the first and second grounds above stated, suffice it to say, that evidence was heard, which tended strongly to prove that the coupling of the train to the coach was made with unusual and unnecessary force, and, also, that the coupling was gently made, and with only such force, as was usual and necessary for such purpose. There was evidence which tended to prove that appellee, without any apparent reason for so doing, and with knowledge that the time of the coupling was imminent, remained standing in the car and had ample time before the coupling was made to have secured a seat and thus to have escaped any injury, and that her fall to the floor of the car was caused by the usual and necessary force of a usual coupling; while upon the other hand, there was testimony which tended to prove that appellee was unaware of the approach of the train to the coach, and that she had not a reasonable time after entering the coach to secure a seat before the coupling was made and she was thrown to the floor; that she proceeded about securing a seat immediately upon entering the car and was guilty of nothing which could be attributed to her as negligence before the injury was received by her. Under the evidence, the alleged negligence of the servants of appellant, as well as the alleged contributory negligence of the appellee, were issues which should have been submitted to and determined by the jury, under proper instructions. The court was not in error in refusing to peremptorily direct a verdict for appellant either at the close of the evidence for appellee or at the close of all the evidence.

(b) The circuit court did not err in refusing a new trial upon the ground that the verdict is not sustained by a sufficiency of evidence. This court has so often held, that it will not reverse a judgment upon that ground, unless the verdict is palpably or flagrantly against the weight of the evidence, that it is unnecessary

to discuss the evidence or to cite authorities in support of the rule.

(c, 1) The appellee, during the course of introducing her evidence upon the trial, was permitted to prove, over the objection of the appellant, that after she had received the injury complained of, that she addressed letters, one to the conductor of the train and the other to H. L. Stone, the general counsel of appellant, in which she stated that she had been informed that the conductor had secured the names of all the passengers who were in the coach at the time she sustained the injury, and requesting them to communicate the names of such persons to her, as she was unacquainted with any of them. Copies of these letters were permitted to be read, and the statement made that the letters were sent by registered mail, and the receipts purporting to be signed by the conductor and Stone, were, also, read. Upon what theory these letters or any statement in regard to them could throw any light upon the issues to be decided, it is impossible to see. The appellee undoubtedly had the right to write and send the letters, but the ones to whom they were addressed were within their rights if they declined to answer or to communicate the information desired. They were agents of appellant, and their declarations in regard to the occurrence in which appellee was injured, made after its happening, would not have been competent as evidence against appellant upon the trial. Their silence when a request was made for information sought in the letters could not be competent evidence against appellant for any purpose touching the facts of the occurrence. It does not even appear whether an answer was received to the communication which was addressed to Stone. The conductor denied the receipt of the letter addressed to him. An action at law must be tried upon the evidence which is before the court, and not upon surmises of what might be proven by other witnesses, who are not before the court and of whose existence there can be only a suspicion. The introduction of the letters and the statements in regard to them could not support any contention of the appellee, as to the facts of the occurrence, when her injury was received, and could have but one effect. The effect their introduction necessarily had was to convey to the minds of the jurors the idea, that there were possibly witnesses, who if present would corroborate the testimony of the

witnesses for appellee, and induce them to make a verdict, not upon the evidence before them, but upon what some others would testify, whom they might surmise existed, and the, further, effect to arouse the prejudice of the jurors upon the idea that something was being concealed from them, to the prejudice of the appellee.

(2) William Smith, a witness for appellee, was permitted to testify, over the objection of the appellant, that a short time after appellee had been carried out of the coach, that the conductor of the train came in and engaged in a conversation with the persons in the coach, during which he propounded the question: "Do you think that car could have knocked her down? I don't see how it could," and that some one in the car in response to the question and statement of the conductor said: "I thought it made a right smart little thump." This declaration could not, as a matter of course, be competent as evidence, unless it was a part of the *res gestae*, and from the fact that Smith was called upon to give his opinion as to how long it was after appellee was borne from the car when this conversation occurred, and stated that it was about one and a half minutes, we presume that the trial court allowed it to be proven in the evidence upon the theory that it was a part of the *res gestae* and illustrated how the injury was incurred by appellee. It is often a matter of extreme difficulty to determine whether a declaration or act is or is not a part of the *res gestae*. The *res gestae* are broadly speaking the things done when the main transaction in controversy occurs, and contemporaneous with its doing. The circumstances of each transaction, however, being different, the courts must necessarily adjudge whether a thing is a part of the *res gestae* upon the facts and circumstances of the particular case under consideration. A rule of general application, which prevails in this state and which governs the admissibility of declarations as *res gestae*, is that the declaration to be admissible as substantive evidence as a part of the *res gestae* must be made by one of the actors in the transaction and the declarations of third persons and bystanders are not admissible as a part of the *res gestae*. True, the courts have held that where an individual is maintaining a suit for damages received from leaping from trains to avoid the dangers of collision with another train or other danger, that it is competent to prove the cries and exclama-

tions of other passengers to show the reasonable expectation of danger from remaining on the train, as bearing upon his exercise of prudence in jumping from the train, but what the other passengers, under circumstances of this kind, say, is irrelevant. L. & N. R. R. Co. v. Carothers, 65 S. W. 833; L. & N. R. R. Co. v. Simpson, 111 Ky. 754. It was held in Louisville & Cincinnati Packet Company v. Samuels, 59 S. W. 3, where the suit was to recover damages for personal injuries on account of the breaking of a plank which Samuels was directed to walk upon, and just before the plank broke, a third party cried out to "look out, that the plank was cracked," that this exclamation of a third party was not admissible as evidence. The rule which excludes the declarations and exclamations of third parties as part of the *res gestae* applies in criminal prosecutions, as was held in Kaelin v. Com., 84 Ky. 354, and Bradshaw v. Com., 10 Bush 576. Hence, the statement proven to have been made by one of the persons in the coach by Smith to the effect that the coupling "made a right smart little thump," was inadmissible as evidence in this case and was merely hearsay.

(d) With regard to the instructions to the jury, the appellant in its briefs complains only of instruction No. 2 and instruction "A." Instruction "A" was the instruction given upon contributory negligence, and was given upon the motion of appellant, and hence it cannot complain of it. The criticism made of instruction No. 2 is that it permits the recovery by appellee of damages on account of the permanent reduction of her power to earn money, when the petition does not seek damages for this impairment of her power to earn money, and the evidence fails to show that appellee is an earner of money or ever did earn any money. The petition, however, does allege that her injury is a permanent one, and the evidence shows that previous to her injury she was able to and did all the work necessary in keeping her house, and that since the injury she had been unable to do such work and had been compelled to abandon housekeeping on that account. The averment that her injury is permanent and supported by evidence to that effect is sufficient to authorize an instruction, which fixes the permanent reduction of her power to earn money as the test to be applied by the jury in assessing the damages for a permanent injury. The permanent impairment

of the power to earn money is an incident to a permanent injury, and is necessarily such. L. & N. R. R. Co. v. Grassman, 147 Ky. 623; Cumberland Tel. & Tel. Co. v. Overfield, 127 Ky. 548; Maysville & Big Sandy R. R. Co. v. Willis, 104 S. W. 1016. The contention that a recovery for the permanent reduction of power to earn money should not have been permitted because the evidence failed to show that appellee was an earner of money or had ever earned any money, is unsound. The evidence tends to show that before she sustained the injury complained of she had the power to earn money. She likewise had the right to earn money. To destroy her power to earn money is to deprive her of that power and the exercise of the right to earn money. In South Covington & Cincinnati Ry. Co. v. Bolt, 59 S. W. 26, the court declared the following principle:

"Our opinion is, that if a married woman is injured by the negligent act of another, she is entitled to maintain an action for damages, and the same criterion for damages exists as to her, as to a man or a single woman." Macon v. Paducah St. Ry. Co., 110 Ky. 680.

Hence the criticism of the instruction, because it permits a recovery for the permanent impairment of the power to earn money, is not justified.

The errors above mentioned in the admission of incompetent evidence, in our opinion, were prejudicial to the substantial rights of appellant and necessitate the reversal of the judgment appealed from. Hence, it is not necessary to discuss the complaint, that the damages allowed were excessive.

The judgment is reversed and cause remanded for proceedings which are consistent with this opinion.