## Heil v. Seidel.

(Decided May 19, 1933.)

CHARLES W. MORRIS and OSCAR LEIBSON for appellant.
WILLIAM J. GOODWIN for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

Harold Seidel, an infant nearly sixteen years old, by his next friend brought this action against Mrs. Ada Lewis Heil to recover $10,250 for personal injuries received by him in a collision with her automobile. On final hearing the jury returned a verdict for the plaintiff for the amount sued for. The court refused a new trial and entered judgment on the verdict. Mrs. Heil appeals.

The proof on the trial for the plaintiff was in brief, that he was going east on Eastern Parkway on his motorcycle about twenty-five miles an hour. Mrs. Heil was going in her car west on Eastern Parkway about forty miles an hour and when she reached the intersection of Lydia street she made an abrupt turn to the left, without notice, just a few feet in front of his motorcycle, and so close to him that the collision was inevitable.

On the other hand the proof for her was that she gave notice of the turn; that the motorcycle was half a square away and ran into her without any fault on her part.

Seidel in the collision received a fracture of the middle third of the large bone of the right leg, between the hip and the knee, with a flesh wound on the outside over the line of fracture. The bone had slipped over about two inches at the fracture. He had three linear scars on his forehead; the internal angle of one eye was cut, he had a cut in the neck and several other large scars on his face. The clinical examination showed a fractured skull, although the X-ray did not show this. The leg was about half an inch shorter than the other leg after it was reset and the foot was turned in somewhat. He was in the hospital in all nearly two months.

The injury occurred on May 20, 1931. The case was tried in February, 1932.

There is no complaint of the instructions of the court, except as below stated. Appellant asks a reversal on these grounds: (1) The fact that appellant carried liability insurance was gotten before the jury; (2) there was no evidence of permanent impairment of earning power sufficient to take this question to the jury; (3) the verdict, under the proof, is excessive.

When A. T. Fisher, a witness for the plaintiff, was on the stand on cross-examination, he was asked how long he had known W. J. Goodwin, the attorney for appellee, and then this occurred:

> "Q. When did you first talk to him about this case? A. Not very long ago. A considerable time after the insurance company's attorney came to see me.

> "The defendant, by counsel, thereupon moved the court to discharge the jury and reassign the case. The court overruled the motion to which ruling of the court the defendant by counsel excepted.

> "The Court: (To jury) Gentlemen, you will disregard that statement of the witness. That does not have any bearing on the case whatsoever. Dismiss that entirely from your minds. The answer is not responsive to the question and has no bearing on the case at all. There are only two people involved in this case, and they are the plaintiff and Mrs. Heil, that is all."

There was nothing in the attorney's question requiring the answer made by the witness. Apparently he said what he did in an effort to locate the time when the attorney for the plaintiff came to see him. But, however this may be, the court expressly told the jury that they must dismiss this matter from their minds entirely. The answer did not indicate what the insurance was for, and under the ruling of the court clearly there was no substantial prejudice to appellant's rights here.

On the motion for new trial the appellant filed the affidavit of her attorney showing that in the concluding argument to the jury appellee's attorney used language to bring back to the minds of the jury this statement

of the witness about the insurance company's attorney. But a counter-affidavit was filed by the attorney showing that he did not make the precise statement imputed to him and that the words he did use were based upon the evidence. Both of these affidavits are included in the bill of exceptions. But the bill itself is silent on this subject. In Southern Railway Co. v. Thacker's Adm'x, 156 Ky. 486, 161 S. W. 236, 238, the court having before it this precise question, said:

> "Appellant further insists that counsel for appellee, in his closing argument, was guilty of misconduct grossly prejudicial to the railroad company. This misconduct is referred to in the motion for a new trial, and the objectionable language set forth by affidavit of appellant's counsel. The bill of exceptions shows that this affidavit was filed, so we have before us the affidavit of appellant's counsel that counsel for appellee did use certain objectionable language. Under the rule of Warren v. Nash, 68 S. W. 658, 24 Ky. Law Rep. 479, such a presentation perhaps would have been sufficient to bring the objectionable matter to us for consideration; but the Warren v. Nash Case has been overruled on this point by the more recent case of Bannon v. Louisville Trust Co., Adm'r, 150 Ky. 405, 150 S. W. 510. It is not sufficient that appellant's counsel make affidavit as to the language used, or that the court certify that appellant's counsel did make such an affidavit. The fact that appellee's counsel used the language complained of should be authenticated to us in the bill of exceptions by the lower court before we can consider whether or not it was prejudicial."

To the same effect is Allgeyer v. Allgeyer's Executor, 244 Ky. 450, 51 S. W. (2d) 445, where the court on precisely the facts we have here, again said this:

> "The court did not settle or certify what was said in the argument to the jury. It merely incorporated into the record the conflicting affidavits. We cannot determine from the affidavits whether the remarks were made as claimed by the appellant or as claimed by the appellees. The reason for requiring the bill of exceptions to show what occurred at the trial is to eliminate any controversy upon

that subject and to enable us to pass upon the propriety of the rulings of the court.''

The bill of exceptions before us, not showing what the attorney said, this matter cannot be considered on the appeal, and the answer of the witness quoted above standing alone, is insufficient to show that the fact that appellant carried liability insurance was gotten before the jury.

■ As to whether Seidel's power to earn money has been affected by the injury the proof was this: As to the permanent effect of the injury, Dr. L. W. Neblett testified as follows to the brain:

"He was unconscious apparently about two hours; he had an increased spinal fluid pressure. By putting a needle in the spinal canal the fluid runs out that and they can guage whether that is below normal or above normal. This happened to be above normal, which clinically indicates that he had a fracture.

"It would be absolutely impossible for anybody to honestly give you an opinion, because the boy may in ten years from now develop epilepsy and have epileptic fits, and he may not have a bit of trouble. I can't tell you whether he would or not. It is a guess either way."

As to the effect of the injury to the leg he testified as follows:

"Q. So far as you know, from examining this boy and treating him and examining him on February 18, for the purpose of testifying in this trial for the plaintiff, are you able to tell the jury that his power to labor and earn money is now at all impaired? A. He has a little internal bowing of this leg, and has half an inch shortening. That may cause him to tire out, because if he tilts the pelvis and does that continuously, it is an abnormal position."

Dr. E. L. Henderson, who also examined the boy, said this:

"Anyone with that much shortening is bound to have some defect in his walking—in his ability to walk and to work.

"Do you notice any defect as he walks along?

"It is very slight, but if he would stay on his feet for a number of hours he is bound to have some defect there. A man with that much shortening, it is bound to make some difference."

On the other hand two physicians who had examined this boy for the defendant testified that his injury would have no effect on his power to earn money.

The defendant earnestly insists that there was not sufficient evidence here to warrant an instruction on permanent impairment of power to earn money.

In Fry & Kain v. Keen, — Ky. — , 59 S. W. (2d) 3, 5, opinion delivered March 21, 1933, this court thus stated the rule:

"Finally, it is insisted that, inasmuch as there was no proof showing that Keen's earning power was impaired, the court should not have authorized a finding of damages 'for the permanent impairment of his power to earn money.' It is the settled rule in this state that the permanent impairment of power to earn money is a necessary result of permanent injury, and, where the injury is permanent, failure to show one's earning capacity or the impairment thereof is not fatal to a recovery. Cumberland Tel. & Tel. Co. v. Overfield, 127 Ky. 548, 106 S. W. 242, 32 Ky. Law Rep. 421; Louisville & N. R. Co. v. Grassman, 147 Ky. 618, 144 S. W. 748; Chesapeake & O. R. Co. v. Bank's Adm'r, 153 Ky. 629, 156 S. W. 109; Chesapeake & O. R. Co. v. Bland, 171 Ky. 430, 188 S. W. 498; Louisville & N. R. Co. v. Sinclair, 171 Ky. 562, 188 S. W. 648; Moore v. Hart, 171 Ky. 725, 188 S. W. 861; Kentucky & I. T. R. Co. v. Becker's Adm'r, 185 Ky. 169, 214 S. W. 900."

There was proof here that the skull was fractured. The right leg was one-half inch short and the foot turned in. This was a permanent condition affecting his capacity for continued exertion. The injury to the eye and the ugly scars on his face were to be considered in fixing the compensation for the loss sustained. The well-settled rule in this state is that if there is any evidence the question is for the jury. There was evidence here of a probative nature and the question was properly submitted to the jury.

320

■ While the verdict in this case is large, the injury was very serious. By the Constitution the right of jury trial is made inviolate and this necessarily means that the verdict of a jury, when a case has been tried before a jury, shall not be disturbed unless on sufficient grounds. Under this rule it is settled in this state that the verdict of a jury will not be disturbed unless palpably against the evidence. One reason for the rule is that a jury of twelve disinterested men, hearing and seeing the witnesses will, one time with another, better arrive at the truth than this court will from simply reading the evidence. Counsel for appellant cites in his brief a number of cases which were reversed on the ground that the verdict was excessive. But they were in the main cases where the injuries were not serious. On the other hand in the following cases, on proof not unlike that here, in some of them verdicts for a like amount were sustained by the court: Kentucky Trac. & Ter. Co. v. Roman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272; Louisville Taxicab & Trans. Co. v. Reno, 237 Ky. 452, 35 S. W. (2d) 902; Louisville & N. R. Co. v. Mitchell, 162 Ky. 253, 172 S. W. 527; Kentucky Distilleries & Warehouse Co. v. Wells' Guardian, 149 Ky. 275, 148 S. W. 375; Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S. W. 841; Louisville & N. R. Co. v. Clark, 217 Ky. 11, 288 S. W. 1022; Chesapeake & O. R. Co. v. Kennard, 223 Ky. 262, 3 S. W. (2d) 649; Louisville & N. R. Co. v. Mitchell, 173 Ky. 622, 191 S. W. 465.

On the whole case here the court cannot say that the verdict is palpably against the evidence, or not supported by it.

Judgment affirmed.