**Curt SPURLOCK, Appellant,**

v.

**Birtie SPURLOCK, Appellee.**

Court of Appeals of Kentucky.

Sept. 22, 1961.

O. J. Cockrell, Jackson, for appellant.

James S. Hogg, Jackson, for appellee.

STANLEY, Commissioner.

Mrs. Birtie Spurlock was injured while riding in her husband's automobile. She recovered a judgment against him for $6,000. It was disclosed in chambers of the trial court that the case was being defended by the husband's insurance carrier. The appellant relies on these grounds for a reversal of the judgment: (1) the verdict of negligence rests on testimony so at variance with the physical facts that it should be set aside, the "physical facts" being the places of damage on the respective automobiles; (2) error in submitting an issue of damages for permanent impairment of earning power; and (3) excessive verdict.

The appellant's automobile was struck by a truck going in the same direction owned by Roy Seale and driven by Everett S. Moore. The appellant, as defendant, brought in Seale and Moore as third parties defendant, but they were exonerated from liability by a directed verdict and are not here on appeal.

The evidence may be stated in substance. Spurlock pulled over onto his left side of the road after flashing his turn signal to indicate that he would enter an intersecting road. His brake lights were also on. He abruptly turned back into his right lane in the path of the truck after its driver had sounded its horn. The truck driver swerved to his left in trying to avoid the collision, which occurred while the automobile was cutting back to the right. The automobile was mostly left of the center of the road, but its front end was right of center. Moore testified that he was able to slow down his truck at the moment. He and another man in the truck testified that

before the accident Spurlock had been zigzagging, or driving from one side of the road to the other. He testified he had no memory of doing that, but if he did, it was in dodging many holes in the highway. Spurlock maintained that he had been driving completely on his side of the road for 150 to 200 feet before the collision and was within six or seven inches of the right edge of the paving when his car was hit by the oncoming truck. He denied having signaled a purpose to make a left turn. He had not heard the truck's horn.

The right corner of its bumper hit the automobile. The left rear bumper, fender and tail light of Spurlock's car were damaged.

■ The appellant's "physical facts" argument rests on the contention that if his car had been pulling across the highway, as appellee's witnesses testified, then its right side would have been exposed to the truck rather than its left. We note that contrary to other evidence the truck driver stated, "I guess I hit him in the right rear fender." The evidence of the physical damage is not inconsistent with the descriptions given by the plaintiff's witnesses as to how the accident occurred. We cannot follow the appellant's deductions as absolute. The case is far removed from the character of cases in which the rule for which he contends has been applied.

The plaintiff was knocked to the floor of the car by the force of the collision. The evidence as to her injuries is undisputed. The plaintiff's doctor testified she had suffered a spinal injury or "a compression fracture" of her spine, that is, the vertebrae or the bones had been crushed and partially mashed together. The patient was confined to her bed a month or more. During the year intervening between the accident and the trial her activities had been materially impeded and she had suffered continuing pain and discomfort. Her doctor unqualifiedly pronounced the injuries to her spine and nerves to be permanent. The plaintiff was 68 years old at the time of the accident.

Mrs. Spurlock testified that her back hurts her so that she has trouble resting and sleeping and she is no longer able to do her housework of cooking, washing and ironing and scrubbing, as she had always done before. However, she does "what I can and let the rest go."

The plaintiff is doomed to suffer discomfort, pain and semi-invalidism the rest of her life. A sufferer is entitled to compensation from the person whose fault caused an injury so long as his affliction and impaired health, physical and mental, continue and his working capability is lessened. The courts well recognize that pain and suffering have no market price and money is inadequate recompense, but the law can afford no other redress. It at least aids the sufferer to obtain this compensation in such measure as a jury dispassionately may determine to be fair and reasonable considering the circumstances. Sutherland on Damages, §§ 1241, 1242; Gibraltar Coal Mining Co. v. Miller, 233 Ky. 129, 25 S.W.2d 38; Warfield Natural Gas Co. v. Wright, 246 Ky. 208, 54 S.W.2d 666.

"Fair and reasonable compensation" is the measure adopted by the courts many years ago because of the universal agreement that a specific or definitive one is impossible, for no standard or mathematical rule will serve as an index or guide. Botta v. Brunner 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331; 15 Am.Jur., Damages, § 21. This familiar standard of admeasurement was submitted in the instructions in this case.

■ We come to the question of whether is was error to give an instruction allowing damages for permanent injury because of the absence of evidence that the plaintiff had ever "earned money." The foregoing reasoning in respect to compensating pain and suffering in a large degree applies to the diminution or impairment in the power to earn money, especially where the injured person previously had no fixed and stable earnings. The instruction to the jury sub-

mitted the usual measure of damages for such disability as being "any permanent reduction of her [plaintiff's] power to earn money by reason of said injuries." It is to be noted that the criterion is the reduction of earning power—not in earnings. This permits recovery of the fair equivalent in money for the impairment of capacity or lessening of ability to render service worth money as the proximate result of injuries sustained. As well said in Sutherland on Damages, § 1244, p. 4727:

> "It seems plain that wrongful interference with any capacity or function of a human being should be compensated for, aside from any existing need for the exercise of such capacity or function. The vicissitudes of life may call upon any person to put forth every effort to serve himself or those who are dependent upon him. In many if not all cases of serious personal injury the public may have an interest, and its welfare may require that the injured person be compensated for the wrong done him, thus in a measure lessening the demand which may be made upon the public. Impaired ability to work is in itself an injury and deprivation of a substantial right of everybody, distinct from any loss of earnings it entails and the sufferer is entitled to compensation for it. It may be treated as part of the mental suffering resulting from the injury and as due to the consciousness of impaired power to care for one's self. In the nature of the case the sum which will compensate for such damage is not ascertainable by mathematical computation; it must be fixed by the jury with respect to the evidence and the probabilities, and should be sufficient to compensate therefor."

■ This is in accord with our cases which hold that where a person has been permanently injured, failure to prove his earning capacity or its impairment is not fatal to a recovery. Heil v. Seidel, 249 Ky. 314, 60 S.W.2d 626, which collects previous cases; Ralston v. Dossey, 289 Ky. 40, 157 S.W.2d 739. The jury may be presumed to be reasonably familiar with the value of labor and services which the plaintiff was capable of rendering. Bessire & Co. v. Day's Adm'x., 268 Ky. 87, 103 S.W.2d 644; Sutherland on Damages, §§ 1248, 1249, p. 4727.

■ This court long ago recognized that a married woman, as homemaker and housekeeper, who has been permanently crippled and disabled and whose health has been permanently impaired, is entitled to legal compensation for the reduction in earning capacity, for if evidence of past earnings were prerequisite, there could ordinarily be no recovery for a wrong committed upon a woman's body. Hence, the law that direct proof of any specific pecuniary loss is not indispensable to recovery. Of particular application to the instant case are South Covington & Cincinnati St. Ry. Co. v. Bolt, 59 S.W. 26, 22 Ky.Law.Rep. 906; Cumberland Telephone & Telegraph Co. v. Overfield, 127 Ky. 548, 106 S.W. 242, 32 Ky.Law.Rep. 421; City of Louisville v. Tompkins, Ky., 122 S.W. 174; Louisville & N. R. v. Sinclair, 171 Ky. 562, 188 S.W. 648; Kentucky & Indiana Terminal Railroad Co. v. Becker's Admr., 185 Ky. 169, 214 S.W. 900.

■ We do not regard the verdict as excessive as that term has been many times defined.

The judgment is affirmed.