Bobbie Jean JONES, Individually and as Administratrix of the Estate of Richard Wayne Jones, Deceased, Appellant,

v.

James STERN, M.D.; Gopal Rastogi, M.D., Appellees.

No. 2004–CA–000192–MR.

Court of Appeals of Kentucky.

Jan. 28, 2005.

Discretionary Review Denied by Supreme Court Aug. 17, 2005.

5. *Id.*

6. *Hook v. Hook*, Ky., 563 S.W.2d 716 (1978).

7. *Hale v. Deaton*, Ky., 528 S.W.2d 719 (1975).

Gary N. Hudson, Zoellers, Hudson & Bently, London, KY, for Appellant.

Joe L. Travis, Travis, Pruitt, Somerset, KY, for Appellee.

Before COMBS, Chief Judge; MINTON, Judge; MILLER, Senior Judge.[1]

## OPINION

MILLER, Senior Judge.

This is a medical malpractice case in which Bobbie Jean Jones, individually and as Administratrix of the estate of Richard Wayne Jones, deceased, appeals from a judgment entered upon a jury verdict adjudging Gopal Rastogi, M.D., not liable in the death of Richard, and adjudging James Stern, M.D., 5% liable in same. As against Dr. Stern the judgment awarded the appellant $4,750.25 plus 5% of costs expended in the litigation. The appellant contends that the trial court erred by permitting an apportionment of fault to a nonsettling nonparty; by failing to include an instruction for loss of future income; by permitting Dr. Alan Graham to testify as an expert witness on behalf of the appellees; and in its allocation of costs. Because the trial court erred by including the nonsettling nonparty Jefferson County physicians in the apportionment instruction, we reverse and remand for a new trial.

On December 17, 1998, bariatric weight reduction surgery was performed on Richard by Gerald Larson, M.D., at Norton Hospital in Louisville, Kentucky, in Jefferson County. The procedure used was the vertical banded gastroplasty method. Richard weighed approximately 500 pounds and underwent the surgery due to his obesity. It appears that during the procedure Dr. Larson perforated Richard's stomach along the staple line.

Richard was discharged from Norton Hospital on December 24, 1998, and returned to his home in London, Kentucky, in Laurel County. On December 26, 1998, Richard was taken by ambulance to Marymount Hospital in London complaining of severe abdominal pain. He was admitted to the hospital by Dr. Rastogi and, among other things, given IV fluids. Dr. Stern was consulted regarding treatment.

On December 27, 1998, Dr. Stern contacted Dr. Larson, and Richard was transferred to Norton twenty-seven hours after his presentation at Marymount. Norton Hospital doctors attempted to stabilize Richard and surgery was performed, at which time they discovered a stomach perforation and massive amounts of purulent fluid in the body cavity, with infection. Approximately five liters of pus was drained from Richard's stomach cavity and the perforation was repaired. Richard lived a few more hours and was pronounced dead at 6:32 a.m. on December 30, 1998.

The appellant filed a medical malpractice suit against Dr. Larson, John Kuhn, M.D., and Norton's Hospital in Jefferson County, and against Dr. Stern, Dr. Rastogi, and Marymount in Laurel County.

The Jefferson County trial was held first, and commenced on September 23, 2003. Though not defendants in the Jefferson County case by reason of venue, Dr. Stern and Dr. Rastogi were included in the apportionment of fault instructions in that case. The Jefferson County jury exonerated Dr. Larson and Dr. Kuhn in Rich-

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110.(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

ard's death. Having exonerated the Jefferson County doctors, the jury proceeded to make no apportionment of blame against Dr. Stern and Dr. Rastogi.[2]

The Laurel County trial commenced on January 7, 2004. Similar to the situation in the Jefferson County trial, though Dr. Larson and Dr. Kuhn were not defendants to the action, they were included in the apportionment instruction. The jury returned a verdict determining, as to Richard's death, that Dr. Stern was 5% at fault, that Dr. Rastogi was not at fault, that Dr. Larson was 85% at fault, and that Richard was 10% at fault. The appellant was awarded a judgment against Dr. Stern of $4,750.25 (5% of $95,005.00) plus 5% of costs expended in the litigation. This appeal followed.

▆▆ The appellant's principal argument is that the trial court erred by giving an apportionment of fault instruction which included Dr. Larson and Dr. Kuhn. She argues that because the Jefferson County doctors were non-settling, non-parties to the action, it was error to include them in the apportionment instruction. We agree.

The tort claim against Dr. Larson and Dr. Kuhn arose in Jefferson County, and thus the appellant was required to sue them either in Jefferson County or the county where the physicians reside. Kentucky Revised Statutes (KRS) 452.460. As neither Dr. Larson nor Dr. Kuhn resided in Laurel County, Laurel County was not a proper venue for bringing suit against the Jefferson County doctors. The Jefferson County doctors accordingly were not parties to the Laurel County suit. Instead, the Jefferson County doctors were sued in Jefferson Circuit Court and the trial in that case was held prior to the Laurel County trial. In the Jefferson County trial, both Dr. Larson and Dr. Kuhn were adjudged not liable in Richard's death. As the Jefferson County doctors pursued the case through trial, it follows that they were nonsettling parties in the case.

In summary, Dr. Larson and Dr. Kuhn were nonsettling nonparties to the Laurel County lawsuit. KRS 411.182 provides as follows:

(1) In all tort actions, including products liability actions, involving fault of more than one (1) party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant

---

**2.** It appears that no appeal was taken from the judgment in the Jefferson County proceeding.

in accordance with the respective percentages of fault.

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

In *Baker v. Webb*, 883 S.W.2d 898 (Ky. App.1994) this court interpreted KRS 411.182 in addressing the precise issue raised in this case, i.e., whether a nonsettling non-party could be included in the apportionment instruction, and concluded as follows:

> *[T]he thrust of KRS 411.182,* considered in its entirety, *limits allocation of fault to* those who actively assert claims, offensively or defensively, as *parties in the litigation or who have settled by release or agreement.* When the statute states that the trier-of-fact shall consider the conduct of "each party at fault," such phrase means those parties complying with the statute as named parties to the litigation and those who have settled prior to litigation, not the world at large (Emphasis added).

*Id.* at 900.

Dr. Larson and Dr. Kuhn were not parties to the Laurel County litigation, nor were they parties who settled prior to the litigation by release or agreement. It follows that they should not have been included in the apportionment instruction.

*Id.; see also Floyd v. Carlisle Construction Company, Inc.,* 758 S.W.2d 430 (Ky. 1988); *Bass v. Williams,* 839 S.W.2d 559 (Ky.App.1992); *Copass v. Monroe County Medical Foundation, Inc.,* 900 S.W.2d 617 (Ky.App.1995).

The jury allocated 85% of the fault to Dr. Larson. The appellant was plainly prejudiced by the allocation of fault. We accordingly reverse the judgment and remand for a new trial. Upon retrial, Dr. Larson and Dr. Kuhn shall not be included in the apportionment of fault instruction.[3]

▬ Because they may recur upon retrial of this case, we also address the issues of whether the appellant was entitled to an impairment of future earnings instruction and whether it was proper for Dr. Alan Graham to testify as an expert witness on behalf of the appellees.

The appellant sought an instruction on loss of future income, which was denied by the trial court. At the time of his death Richard was receiving a Social Security Disability check in the amount of $920.00 per month. Though Richard was severely overweight and suffered from insulin-dependent diabetes with a history of heart problems, kidney problems, and circulatory problems, the appellant alleges that Richard was expected to make a recovery following the surgery after which he planned on returning to gainful employment.

▬ A party plaintiff is entitled to have his theory of the case submitted to the jury if there is any evidence to sustain it. *Clark v. Hauck Mfg. Co.,* 910 S.W.2d 247, 250 (Ky.1995). Even if it was not Richard's intention to ever return to work, it is to be noted that the criterion for a recovery for loss of future earnings is the

---

**3.** This appeal highlights the dilemma caused by what some might think are antiquated venue statutes. *Cf., Copass v. Monroe County Medical Foundation, Inc.,* 900 S.W.2d 617 (Ky.APP.1995).

reduction of earning power. *Spurlock v. Spurlock*, 349 S.W.2d 696, 699 (Ky.1961). This permits recovery of the fair equivalent in money for the impairment of capacity or lessening of ability to render service worth money as the proximate result of injuries sustained. *Id.*

It seems plain that wrongful interference with any capacity or function of a human being should be compensated for, aside from any existing need for the exercise of such capacity or function. The vicissitudes of life may call upon any person to put forth every effort to serve himself or those who are dependent upon him. In many if not all cases of serious personal injury the public may have an interest, and its welfare may require that the injured person be compensated for the wrong done him, thus in a measure lessening the demand which may be made upon the public. Impaired ability to work is in itself an injury and deprivation of a substantial right of everybody, distinct from any loss of earnings it entails and the sufferer is entitled to compensation for it. It may be treated as part of the mental suffering resulting from the injury and as due to the consciousness of impaired power to care for one's self. In the nature of the case the sum which will compensate for such damage is not ascertainable by mathematical computation; it must be fixed by the jury with respect to the evidence and the probabilities, and should be sufficient to compensate therefor.

*Id.* (quoting *Sutherland on Damages*, § 1244, p. 4727; *see also Heil v. Seidel*, 249 Ky. 314, 60 S.W.2d 626 (1933), which collects previous cases; and *Ralston v. Dossey*, 289 Ky. 40, 157 S.W.2d 739 (1941)).

■ The jury may be presumed to be reasonably familiar with the value of labor and services which the plaintiff was capable of rendering. *Id.* (citing *Bessire & Co. v. Day's Adm'x.*, 268 Ky. 87, 103 S.W.2d 644 (1937) and *Sutherland on Damages*, §§ 1248, 1249, p. 4727). Direct proof of any specific pecuniary loss is not indispensable to recovery. *Id.*

Upon retrial, and upon proper request by the appellant, an impairment for future earning instruction should be given.

Dr. Graham was permitted to testify on behalf of the appellees as an expert witness. The appellants contend that Dr. Graham was not qualified to testify as an expert witness on behalf of the appellees on the basis that at the time of Richard's treatment he was a business partner of Dr. Stern's; because he is a good friend of Dr. Stern's; and because he had never before testified as an expert witness.

The trial court is vested with wide discretion in determining to admit or exclude expert testimony. *Video Village v. Commonwealth*, 825 S.W.2d 288, 289 (Ky.App. 1992).

■ The trial judge "has wide discretion in (the) determination to admit and exclude evidence, and this is particularly true in the case of expert testimony." *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 2903, 41 L.Ed.2d 590, 615 (1974); *Keene v. Commonwealth*, 516 S.W.2d 852, 855 (Ky.1974).

Dr. Graham testified that he is a general surgeon practicing in London, Kentucky. He went to undergraduate school at Michigan State University, medical school at Thomas Jefferson University, and completed his five-year surgical training residency at The University of Tennessee at Memphis.

Dr. Graham's medical training and experience were of sufficient gravity to qualify him as an expert witness. As to his past association and friendship with Dr. Stern, the appellant was free to impeach him on

same, and we do not believe that this relationship required his disqualification as a witness. We conclude that the appellant's challenge to Dr. Graham's qualifications goes more toward the weight of his testimony rather than the admissibility, that the trial court did not abuse its discretion in permitting Dr. Graham to testify as an expert, and if the appellant so chooses Dr. Graham may testify as an expert upon retrial.

The appellants also contend that the trial court erred in its assessment of costs in this case; however, as the case is being remanded for retrial and for a reapportionment of fault, we consider this issue to be moot, and we will not consider the trial court's assessment of costs on the merits.

For the foregoing reasons the judgment of the Laurel Circuit Court is reversed and remanded for proceedings consistent with this opinion.

ALL CONCUR.